Sorry. I'm sorry. We got to wait. I'm sorry. I would have said it also if I thought you wanted to go there. Sorry. I'm a little faster. You thought. You seconded the motion. It seemed like I may just turn that pressure right now. It's OK. All right. Our next case for argument is 2019-1835, Unilock versus LG Electronics. Mr. Foster, please proceed. Thank you very much. I need some water. Please, the court, the invention here goes back to 1999-2000, the first year of what we now refer to as Bluetooth, although the standards changed substantially over the last 20 years. There was a technical problem with the original Bluetooth specification, which is outlined in the patent and in all of the briefs. But to spend 30 seconds just describing how the original Bluetooth was supposed to work, the idea was to set up ad hoc networks between wireless networks between devices. By that, I mean devices which had never seen each other or contacted each other before could connect and have a network and be able to communicate. The way the original Bluetooth specification was designed to do that was through what I'll refer to as a handshaking process. It will send signals back and forth over a period of maybe 30 seconds or so, and when that process was concluded, they would be in active connection. I stress the word active.  That was fine, but there was a sector of the technical market where it didn't really work out very well, and that was battery-powered human interface devices, for instance, a keyboard or a mouse. The way the active connection works, if you have a computer and a battery-powered keyboard, which is a wireless connection, about every 10 milliseconds or so, the computer will ask the keyboard, do you have any keystrokes? Do you have any keystrokes? Mr. Foster, what would you say that the claims are directed to in this case? The claims are directed to, and I'll put it in boldface in the brief, Your Honor, but it's reducing latency in ad hoc networks by adding to what's called an inquiry message, a section which is supposed to pull a second device, and then the second device is able to recognize that there's an extra field, that they have been pulled, and that they are supposed to send data back to the first device if they had been pulled. So getting back to... So would it be equivalent to say there was a communication protocol, you all realized there was a form of dysfunction in that communication protocol, you all realized there was some head space that could be used to improve the communication protocol, and that's what the patent is directed to, which is not abstract. I will bow to your formulation. Well, I want you to disagree with me if you think there's something off about what I said and there's a better way to put it. Well, that's a way of describing it, but I would step back a way. The way I look at it is that you have a communication protocol which isn't working for a particular second technology, there's a need to solve that problem because you have a 30-second delay with getting a keyboard back in line. The problems the inventors were challenged with was how do we solve this technical problem? They observed that there was another, there was a signal being used in the Bluetooth process for a different purpose. That's what I mean, the dead space, the inquiry has, I forget what it was, but a bunch of dead space enough that it could also ask that do you have any data question in that? Yes, the dead space was there, it was there for another purpose, and the inventor says, hey, we don't need all of that for that purpose, we can squeeze this in, and if we squeeze this in, we can accomplish the result that we need to accomplish. Now, once the devices are actively connected, what happens with the battery-powered devices is they have to, they go to sleep sometimes because you're not typing and you go to get a sandwich or something, whatever the reason, after 30 seconds, the keyboard goes to sleep. And the problem with the original Bluetooth spec was in order to get it active again it took 30 seconds for various signaling reasons, and that really wasn't working out very well, and that's where we got to the point where, let me step back a second. The keyboard had to re-enter the network in order to establish the connection. That's different from the handshaking process by which the network was set up in the first place, and that's something that I guess LG didn't appreciate in their pre. It doesn't involve inquiry processes, the re-enter is a separate process for that, but the inventors saw that by using this inquiry process, which is borrowed from the handshaking area of the system, they could establish an immediate connection between the master and slave and pull the slave for user data and get rid of the 30-second delay. Now, this is a one-to-one case. It was a technical problem and it was clearly, in my view, a technical solution. Okay, can I ask you this question? These claims are written as means plus function claims, right? Some of them are, Your Honor. I think the ones we've been discussing are. Well, I know there was some dispute about what was representative, but are both 1 and 2? 1 and 2 are means plus function claims. Are means plus function, and in which case, and there's been no effort to overcome because this uses means language, the Williamson presumption that they are means plus function. Does that, doesn't that mean that the specific structure in the spec is actually part of this claim scope? Yes, the specific structure and the equivalence of the structure as well, Your Honor. You did mention that in our brief, not a lot of argument back and forth on that. Well, I understand why both sides might be a little bit reluctant to press the issue too far because you don't know where it leads for infringement purposes, et cetera. Think about later in the case, but for one-to-one purposes, you're absolutely right. The details of the spec are carried into the claims to the extent they correspond to the means provisions. And that's how we get to talk about Bluetooth, right? Because claims 1 and 2 don't talk about Bluetooth, do they? Well, they don't, but I think there are one or two different claims we should do. We're all, I've got a bunch of clues. There may be, but I think you've argued this as there is one or the other is a representative claim, right? Either one or two. Our position is that it was claim 1 because the features of both terminals are in claim 1. This particular judge, for whatever reason, wanted to limit it to claim 2, and we objected down there. And here we are laying into our patents in front of this Court. So we have described the technical issues and why we think there's a technical solution to a technical problem. Then you come to the legal issues. This is where a lot of problems in the one-to-one area, but here, if the advance on the art is as you described in your summary, I don't see that as abstract by any stretch of the imagination, but that's for the Court to decide. And we covered that in our brief. I'm picking up that the Court is aware of the nature of the invention, so I'm happy to answer any questions, but if you have no further questions, I'm going to sit down. Very good. We'll save the rest of your time for rebuttal. Good morning. May it please the Court? The fundamental problem here is that the claims are drafted at way too high a level. They claim a concept. The claims broadly recite what is... Because it seems to me if we do, we start pouring in all this stuff about the Bluetooth protocol. Well, Your Honor, I'm not quite sure how to answer that question because Uniloc has taken the position that these are not means plus function claims. So we have assumed that we're just looking at the plain language. I don't mean to distract you from where, but where have they said that? In a district court pleading that was filed, they took the position. I have it here. Is it in the appendix? I don't believe it is. It wasn't an issue. And it's DI-91 where Uniloc has not contended any limitations are governed by 112-6. And so we have not gone down that path because, as Your Honor recognizes, and there is no claim construction issue in the case. They've not raised claim construction as a basis for not looking at 101. So I think it is fair, as the district court found, that the claims really are just to this general inventive concept. Well, I mean, before we're going to declare claims ineligible, if there's a question about the construction, ought that not to be resolved? There is not a question about the construction, Your Honor. That's, I think, my point is that the parties have not raised claim construction. I don't really care because it's a question of law, and these are means plus function claims. And I don't see any way around that. So once I start with what do these claims cover, I then look to the spec. I pull in a Bluetooth protocol, and I don't see how these are abstract. I see them as being directed to an improvement in network or computer functionality, exactly like was excluded from Alice's coverage of 101 ineligibility, the opposite of the opinions that I've recently issued on the topic. So I'm completely baffled. Okay. Well, first of all, ULOC has not raised claim construction as a basis for an error in the district court. I have claims in front of me, and I'm supposed to decide whether they're ineligible. In order to undertake that, I have to figure out what they're directed to. The Supreme Court told me that. So I have to look at the claim language. And, I mean, what these claims seem to me to be directed to is an improvement in Bluetooth networking. Well, as I said, I believe it's claimed at a way too high a level is what the problem is, because if you look at the claim But inherent in that, Mr. Jakes, is my acceptance that these aren't means plus function claims, which you seem to want me to accept. We have not argued about means plus function either side in this case. You made some passing references to it in your brief, I think, which I took as a kind of acknowledgment that maybe this is worth adverting to, because there's something lurking here. We only referred to their brief which said, these claims may include such things as, And I think our point was, they haven't really made a structural argument and told us what that corresponding structure is. I actually think there is a problem if you go down that path, because as to what is the inventive concept, there really isn't any structure that describes it. What you have is the existing Bluetooth structure, and then you have what the claim adds, adding to each inquiry message an additional data field. That's it. And that's what the patent describes as the general inventive concept. They recognized that you could allow parked devices to communicate by keeping this open channel, utilizing in particular a data field that was already present. That seems like a very specific solution, not a sort of result-oriented claiming approach, but rather a specific solution to a problem. And there's no doubt that they have alleged, and the record supports, that this solution dramatically reduced the lag time or wait time in these systems, between when you move the mouse and when you actually have a reaction on the computer. Your Honor, I think we have to focus on the claim language. There's nothing about parked devices in the claim language. There's nothing about latency in the claim language. The only thing that is described is adding to the inquiry message an additional data field. Doesn't that way of putting it overlook the distinction between the inquiry message and polling, which is in the claim language? Which in some way is kind of the heart of what they say they noticed and fixed. Well, I understand your question, Your Honor. Maybe I can answer it this way. The inquiry message has a plurality of data fields. That's in the claim. And that is known. There's nothing new about that. So they did recognize something. They basically said, hey, let's make one of these fields polling data. They're basically just labeling what that data is in the communication protocol. And they allege that you get all these great results. Why is that just labeling? I thought it was undisputed that polling is a specific kind of request that triggers the ability for the slave to send data right back. You're right, Your Honor. My point is that the inquiry message has a number of predetermined data fields. And they're just saying, look, we'll call one of them polling data. And you can use that. But the communication. Not call one of them polling data. We'll use one of them to poll, which had not been done previously. At least alleged according to this patent. It stays in the record. If you look at claim two, it does call it polling data. It doesn't really say what happens with it. There's nothing further. That's why I say it's at too high a level. It just basically says for the message inquiry, put in some polling data in one of these data fields. Okay. Mr. Jakeson, on the opponent's brief on page seven at the top, it references to the patent. It says the means for adding the field, which seems to suggest that maybe these are means plus function claims. Yes. The means for adding the field would include. And then it goes on and states what would be included, what was created by rewriting the code for this particular patent. That's more than just nothing, right? Well, I think we addressed that, Your Honor. Saying that these means may include something is not the same as saying this is what the corresponding structure is in the specification. And the claims are limited to that. They have not done that. And as I said, that was document number 91 in the district court. They said 112 paragraph 6 does not apply to any limitation. So by saying these claims include that, we don't really have a problem with that because they could certainly cover it. But that's not the same thing as saying they're limited to the particular structure and then pointing to that structure in the specification. And one of the problems is all the structure is conventional Bluetooth. That's all that's described. You have the patent saying use the communication protocols that already exist. There's no new communication protocol. On that same page, there's a second paragraph, and this starts, in the invention but not in the Bluetooth 1.0b specification, the Park HID would respond to the pull. So isn't that adding more than what's just in the Bluetooth specification? Yes, Your Honor, that is right. The Bluetooth specification doesn't say in these data fields in the message inquiry, the inquiry message, to put polling data in there. And that is what would be different. And as we know, when you look at what the claim is directed to, you look at what the claim advances. And the only thing in the claim is adding that polling data. So that's not in the poll. If that's a change in the technology, that's a technological change, and it resolves a technological problem, then why aren't we looking at ENFISH here? I don't think this is an ENFISH situation because there is no, well, first of all, the result, the latency, it's not claimed. This could be... It's not claimed, but it's expressly mentioned in the specification that it's the result of performing the process this way. You know, the claims don't say that, and I think the focus has to be on the claims. In ENFISH, the claims didn't say in them that it reduced data consumption or it made more efficient searching. Claims didn't say that in ENFISH. In, let's see, McRow, the claims didn't say it. In Affinity Labs, the claims didn't say it. We've often looked at the spec to describe what the advantages are of what is actually claimed. That I understand. Yes, Your Honor. But here all we have is at the very high level, general statement, add polling data into one of these fields. And I think the district court was correct when she said that's what this is directed to. Putting polling data in one of these fields. Now, that was described as a general inventive concept in the patent, and there really isn't anything more to it. And that's why it comes down to being an abstract idea. Can I just ask about that therefore? Let's assume for a minute that one puts aside means plus function... Okay. I'm going to stop talking about Bluetooth, but there's certain words here, and there's an inquiry message from a master to a slave or whatever the claim language, primary and secondary or something. And then in that inquiry message, there's now going to be placed a particular kind of new data field, one that includes polling data. Now, a certain amount of claim construction has to be done, whether formal or otherwise, to understand what is going on. But even at that level, why is that not a technical improvement in how this little communication network works? I believe it's because it's claimed at way too high a level. And so that it's merely the abstract idea of adding polling data. There's nothing additional to that. It doesn't say what the data is, what the rules are for it, how it works. There's none of that included. It's just pure functional language at the highest level that says, put polling data in this space. It's a discovery that, hey, there's a little bit of space here. And that sounds like an abstract idea, and I believe it was, unless there's something more to it. You say it's a discovery, there's a little bit of space here, and then they specifically figured out what to use that space for and how it would reduce latency, which in your red brief at 54, you call a, let's see, what is it, of an inherent result of performing polling as part of the inquiry process, which hadn't been done before because nobody knew the space was there to do it. There's always been polling, and that's conventional, so there's nothing new there. Yeah, the old polling resulted in tens of seconds of response time, and when they figured out that you could actually include polling data on the inquiry message because there was enough room to do so, it cut that time down by an order of magnitude. Which you recognize in your brief. Just to be clear, it's only polling during that inquiry message period. Polling works perfectly fine the rest of the time. It's only in that 10.24 seconds when you may be doing that that polling wouldn't be available. And so the effect on latency is it may be there. The effect on latency is only sometimes. It could be. So therefore it's not an invention because it only improves the response time sometimes. Well, Your Honor, that's part of the problem with an abstract idea is it's not fleshed out when you just say add some polling data to the inquiry message and nothing more. It's just, as the patent calls it, a general inventive concept with nothing else that's added in the claims, and the focus is on the claims. There's a lot in the specification. There's nothing about parked stations, and so I think that's where the focus is, and when you look at it, it really adds nothing to what was already there in Bluetooth other than recognizing that some of this data could be called polling data. Okay. Thank you. Mr. Foster, you have some rebuttal time. Your Honor, I'm here to assist the Court in any way I can. Do you have any questions about the invention? Mr. Jake said in DI, docket, whatever, item 91, you said we're not urging that any of the claim language that's under discussion here is 112.6 language. It's news to me, Your Honor. They look like means-plus function claims to me, and I remember it. Do you know what this document is that he's referring to? Is it in there? Well, we can check if you don't have... I'll have to look it up, but I've seen a lot of claims in my life, and these are clearly means-plus function claims. Other than that cited reference in your brief on page 7 where you use the word, the means for adding the field, did you make an argument anywhere else with respect to means-plus function claiming? I have a recollection that in writing the brief, Your Honor, I mentioned that the means-plus function claims incorporate the details, but I was frantically trying to find it when I was sitting there. I didn't find it, but I might be able to. You didn't make that argument. Other than just saying those words, is there anywhere where you fleshed out an argument that means-plus function claiming would have some sort of impact here? Other than saying that means-plus function claims incorporate details in the specification, I recall a sentence or two on that which I cannot try to find, but there is no paragraph talking about means-plus function claims. You did make the argument. Other than what I remember, Your Honor, no. I'll take any other questions, but otherwise I'm going to waive. Well, I think you make the argument on page 28, and I'm going to help you answer Judge Reina's question. I mean, at least there you talk about claims reciting concrete means for achieving. Now, granted, it's not in the context of 112.6, but, I mean, throughout your argument, I understood you in talking about what these claims are directed to, to be importing in from the specification the structure and Bluetooth protocols as though they were part of these claim elements. Maybe you didn't set it up in that old-fashioned patent lawyer way you should have, where you say these are 112.6 claims, here's what the means correspond to and the structure and the spec that will be imported in. But, nonetheless, I read your brief as sort of just automatically importing that into your argument as though it was there. Is that correct? I think that's at least correct for that reason, Your Honor, but also the fact that the inquiry message is defined in the specification, so what language is there necessarily takes its context from the specification. Okay. Thank you, Mr. Foster. The case is taken under submission.